UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| DUSTIN OWEN REDENIUS, | Case No. 3:14-cv-00538-RCJ-VPC |
|---|---|
| Petitioner, | ORDER |
| v. | |
| JACK PALMER, *et al.*, | |
| Respondents. | |

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Dustin Owen Redenius. ECF No. 16.

I. BACKGROUND[1]

On April 19, 2007, a jury in the Second Judicial District Court of the State of Nevada in and for the County of Washoe found Redenius not guilty of sexual assault on a child (Count I), but guilty of lewdness with a child under the age of fourteen years (Count II). At trial, it was not disputed that, in the early morning hours of August 9, 2005, Redenius, Redenius's girlfriend, Desha P., and Desha P.'s twelve-year old daughter (S.P) were in bed together. Redenius later told the police that he was only in the bed for about ten minutes, then left because it was too small for three people. S.P. told the police that Redenius caressed her breasts and vaginal area, and subsequently inserted his penis in her vagina before leaving the room.

---

[1] This procedural background is derived from the exhibits located at ECF Nos. 17-24 and 36-40 and from this court's own docket entries.

The court sentenced Redenius to a term of life imprisonment in the Nevada State Prison with a minimum parole eligibility after ten years. Redenius appealed. On February 26, 2009, the Nevada Supreme Court affirmed the judgment of conviction.

On March 9, 2010, Redenius filed his pro se petition for writ of habeas corpus in state district court. With assistance of counsel, he filed a supplemental petition, which the state district court denied. Redenius appealed.

On March 27, 2014, the Nevada Supreme Court affirmed the state district court's order denying relief. The Nevada Supreme Court subsequently denied Redenius's petition for rehearing. He then moved for en banc reconsideration which the Nevada Supreme Court denied on September 24, 2014.

On October 14, 2014, Redenius mailed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to this court. On October 2, 2015, having been appointed counsel, Redenius filed his first amended petition for writ of habeas corpus. Respondents filed a motion to dismiss in response to the petition, which this court denied.

## II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court

2

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III. DISCUSSION

**Ground One**

In Ground One, Redenius claims his conviction and sentence are in violation of his constitutional right to due process because the State presented insufficient evidence to prove beyond a reasonable doubt that he was guilty of the lewdness charge. Redenius contends that the jury's guilty verdict on the lewdness charge was internally inconsistent with its not guilty verdict on the sexual assault charge. According to Redenius, the lewdness allegation was "part and parcel" of the sexual assault allegation, so if the jury disbelieved S.P.'s allegation regarding the latter it necessarily requires a finding of insufficient evidence as to the former.

Redenius presented his sufficiency of evidence claim to the Nevada Supreme Court in his direct appeal. ECF No. 9-1, p. 11-13. The court addressed the claim as follows:

> Redenius argues that there was insufficient evidence for the jury to find him guilty of lewdness with a minor under the age of fourteen when the jury acquitted him of sexual assault that was alleged to have occurred right after the conduct supporting the lewdness conviction. Redenius contends that pursuant to our holding in *Crowley v. State*, 120 Nev. 30, 83 P.3d 282 (2004), since the jury found that the State failed to meet its burden on the sexual assault charge, and the lewdness was a prelude to the sexual assault, there was insufficient evidence for the jury to find that he committed a lewd act with the victim. Redenius further contends that for a jury to convict on a charge of lewdness and acquit on a charge of sexual assault leads to a verdict, which is inconsistent with the facts of the case.
>
> This court will not reverse a jury's verdict on appeal if that verdict is supported by substantial evidence. *Moore v. State*, 122 Nev. 27, 35, 126 P.3d 508, 513 (2006). "There is sufficient evidence if the evidence, viewed in the light most favorable to the prosecution, would allow any rational trier

4

of fact to find the essential elements of the crime beyond a reasonable doubt." *Leonard v. State*, 114 Nev. 1196, 1209–10, 969 P.2d 288, 297 (1998). In *Crowley*, 120 Nev. at 34, 83 P.3d at 285–86, we overturned a lewdness conviction when the defendant was also convicted of sexual assault for the same act on which the lewdness conviction was based. We determined that Crowley's act of rubbing the young male victim's penis was a prelude to the sexual assault and not a separate lewd act since Crowley never stopped his actions. *Id.* at 34, 83 P.3d at 285.

Our review of the record reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. The victim testified that Redenius first touched her breasts, stomach and vagina.

She further testified that Redenius stopped touching her for a short period of time, which led her to believe that the incident was over, before Redenius allegedly had sexual intercourse with her. Redenius did stop, even if it was for a very brief period, in between his lewd touching of the victim and the alleged sexual assault. Further, Redenius' reading of our decision in *Crowley* is faulty and inconsistent with our actual holding. In *Crowley*, we held that a defendant may not be convicted of both lewdness and sexual assault when the conduct supporting the lewdness conviction was a mere prelude to a sexual assault that occurs immediately thereafter. *Id.* at 34, 83 P.3d at 285–86. We did not hold that an acquittal on a charge of sexual assault immediately after lewd conduct necessitated an acquittal for lewdness.

Moreover, Redenius' case is distinguishable from *Crowley*. *Id.* at 31–32, 83 P.3d at 284. In *Crowley*, there was no interruption between Crowley's lewd act of touching the young male victim's penis and the sexual assault which followed. *Id.* at 34, 83 P.3d at 285. Whereas in the instant case, there was an interruption between the lewd act and the alleged sexual assault. Therefore, we conclude that no relief is warranted on this claim.

ECF No. 9-4, p. 2-4.

The Nevada Supreme Court correctly identified the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), as the federal law standard to test whether sufficient evidence supports a state conviction. *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). And because this court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this court "think[s]

5

the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id*.

This court sees no internal inconsistency with respect to the jury's verdicts on the two charges. Had the jury found him not guilty of lewdness, but guilty of sexual assault, Redenius's argument would be somewhat more convincing. But, because the sexual assault charge required proof of elements not part of the lewdness charge – most notably sexual penetration and lack of consent – the jury's not guilty verdict on the former did not conflict with its guilty verdict on the latter. *Cf*. Nev. Rev. Stat. § 200.366 (2003),[2] *with* Nev. Rev. Stat. § 201.230 (2003). Moreover, the jury was entitled to give credence to portions of a S.P.'s testimony while discrediting other portions.

The evidence presented a trial is sufficient for this court to conclude that the Nevada Supreme Court's decision to deny relief was not "objectively unreasonable" under the *Jackson* standard.

Ground One is denied.

**Ground Two**

In Ground Two, Redenius claims that language used in the trial court's reasonable doubt instruction allowed for a conviction based on a quantum of jury belief below the reasonable doubt standard established by the U.S. Supreme Court. The reasonable doubt instruction at Redenius's trial read as follows:

> A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

ECF No. 20, p. 9.

On direct appeal, the Nevada Supreme Court rejected Redenius's argument that the instruction violated his constitutional rights:

---

[2] **Error! Main Document Only.**In 2015, the statute was amended to provide that sexual penetration of a child under the age of 14 years is statutory sexual assault. *See* Nev. Rev. Stat. 200.366(1)(b).

6

> Redenius argues that the caselaw of this and other jurisdictions does not support the "more weighty affairs of life" instruction for reasonable doubt currently encompassed in NRS 175.211(1). Redenius argues that this court should hold that the reasonable doubt instruction of NRS 175.211(1) is unconstitutional. This court reviews a district court's decision regarding jury instructions for an abuse of discretion. *Rose v. State*, 123 Nev. 24, ——, 163 P.3d 408, 415 (2007).
>
> We conclude that Redenius' argument concerning the constitutionality of the reasonable doubt instruction as codified at NRS 175.211(1) and given by the district court in this case is entirely without merit. "This court has repeatedly reaffirmed the constitutionality of Nevada's reasonable doubt instruction." *Buchanan v. State*, 119 Nev. 201, 221, 69 P.3d 694, 708 (2003). The Ninth Circuit Court of Appeals has also upheld this state's reasonable doubt instruction. *Ramirez v. Hatcher*, 136 F.3d 1209, 1215 (9th Cir.1998). Thus, the district court did not abuse its discretion in giving the reasonable doubt instruction codified by NRS 175.211(1).

ECF No. 9-4, p. 6 (footnote omitted).

The constitutionality of the reasonable doubt jury instruction depends on "'whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet' the requirements of due process." *Ramirez*, 136 F.3d at 1211 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)). The jury instruction on reasonable doubt used at Redenius's trial was the same instruction challenged in *Ramirez*, which the court of appeals criticized but nonetheless upheld as constitutional. *Ramirez*, 136 F.3d at 1214-15; *see, also, Nevius v. McDaniel*, 218 F.3d 940, 944-45 (9th Cir. 2000). As such, the law of this circuit forecloses habeas relief based on this jury instruction.

Ground Two is denied.

**Ground Three**

Ground Three consists of claims that Redenius was deprived of effective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments. To establish a claim of ineffective assistance of counsel (IAC) under *Strickland*, a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial

whose result is reliable." *Id.* at 687. Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*Ground Three(B)*

In Ground Three(B), Redenius alleges that his counsel was ineffective by failing to object to the introduction of a redacted videotape of S.P.'s statement into jury deliberations. The videotaped statement was not played in open court, but was admitted as evidence. Citing to *United States v. Noushfar*, 78 F.3d 1442 (9th Cir. 1996), Redenius argues that allowing the videotape into the jury room without having it played in open court was structural error. In Ground Four, Redenius claims that his appellate counsel was ineffective for not raising the issue on direct appeal.

Having cited to the *Strickland* standard, the Nevada Supreme Court addressed the issue as follows in Redenius's post-conviction proceeding:

> [A]ppellant argues that trial counsel was ineffective for failing to object to the jury's having had access to the victim's videotaped statement to the police where the video was not played in open court. Appellant also contends that appellate counsel was ineffective for failing to argue on direct appeal that the submission of the unplayed videotape to the jury during deliberations was structural error requiring an automatic reversal of the conviction and a new trial. Appellant failed to demonstrate prejudice. The videotape was inaudible and the jury was presented with a transcript of the victim's statement. Appellant has neither presented any evidence that jurors in fact viewed the videotape[1] nor identified anything in the videotape that the jurors should not have seen and thus failed to demonstrate a reasonable probability of a different outcome at trial.
>
> Furthermore, appellant's reliance on *United States v. Noushfar*, 78 F.3d 1442, 1445 (9th Cir.1996) (holding that it was structural error to allow the jury to take into deliberations tapes that had not been played in the courtroom because the evidence had not been "presented and tested in front of the jury, judge and defendant"), *as amended*, 140 F.3d 1244 (9th Cir.1998), is unavailing, because two years later, the court decided *Eslaminia v. White*, in which it essentially limited the holding in *Noushfar* to its facts -- the jury was given access to 14 tapes of conversations in which the defendants incriminated themselves, 136 F.3d 1234, 1237 n.1 (9th Cir.1998). The *Eslaminia* court instead examined for harmless error the jury's consideration of an unadmitted recording of a conversation by the defendant's brother, who did not testify at trial, that "seriously impact[ed]"

8

the defendant's credibility but did not directly incriminate him,[2] *Id.* at 1237 & n.1. In light of the lack of a directly on-point case by the United States Supreme Court or even the Ninth Circuit Court of Appeals, appellant failed to demonstrate a reasonable probability of a different outcome on appeal had appellate counsel raised the issue on direct appeal. We therefore conclude that the district court did not err in denying these claims.

_____

[1] Appellant refers to a comment by the jury foreperson, which he characterizes as "discussing" the video. However, the comment was made in the context of requesting a transcript of appellant's statement to the police and merely acknowledged to the trial court that the jury had the video of appellant's interview and a transcript of the victim's statement.

[2] In contrast, the parties agree that the videotape at issue here was admitted into evidence.

ECF No. 40-23, p. 5-6.

This court agrees that *Noushfar* is not controlling and easily distinguishable from this case. As noted in *Eslaminia*, the structural error holding in *Noushfar* was premised on the conclusion that "[t]he quantity of the extrinsic evidence and its incriminating character made it impossible for the reviewing court to determine the impact on jurors." *Eslaminia*, 136 F.3d at 1237. The single, barely audible, videotape of a witness who testified a Redenius's trial does not raise similar concerns.

Moreover, the court in *Noushfar* was not considering the error within the context of an ineffective assistance of counsel claim. *See Noushfar*, 78 F.3d at 1444–45. It has not been conclusively decided in the Ninth Circuit that *Strickland* prejudice can be presumed where counsel's deficient performance results in a structural error. *See United States v. Withers*, 638 F.3d 1055, 1067 (9th Cir. 2011) (holding that such a claim is not frivolous, but not resolving the issue and noting a split of authority). In the absence of a clear holding from the Supreme Court on the issue, this court must defer to the Nevada Supreme Court's decision. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'").

Redenius has made no showing that he suffered *Strickland*-level prejudice by the presence of the redacted videotape in the jury room. Indeed, he does not meaningfully dispute the Nevada Supreme Court's findings that the videotape was "inaudible" and

1  that there is no evidence the jurors actually watched the tape. And, as noted, a written
2  transcript of the statement was also available to the jury. Thus, Redenius has not
3  established the Nevada Supreme Court's application of *Strickland* to his trial and
4  appellate IAC claims was unreasonable. *See Richter*, 562 U.S. at 101.

Grounds Three(B) and Four are denied.

*Ground Three(C)*

In Ground Three(C), Redenius alleges that trial counsel was ineffective in her use at trial of the transcript of S.P.'s statement. He contends that, by using the statement to cross-examine S.P., counsel opened the door for the prosecution to have the redacted statement and videotape admitted into evidence. According to Redenius, the prejudicial effect of having the statement admitted outweighed any benefit gained by its use as a cross-examination tool.

Because the Nevada Supreme Court did not address the claim on the merits (ECF No. 40-23, p. 3), this court reviews the claim de novo. Under such review, the claim fails to satisfy either prong of the *Strickland* standard. Even if counsel's use of the transcript was not particularly effective, Redenius has not shown that counsel's efforts in this regard fell below an objective standard of reasonableness. With respect to prejudice, Redenius makes only a broad claim that "the information trial counsel sought during cross-examination did not outweigh the prejudicial effect of the introduction of the redacted statement." ECF No. 16, p. 27. He does not, however, establish that, absent the introduction of the statement, there is a reasonable probability that the outcome of his trial would have been different.

Ground Three(C) is denied.

*Ground Three(D)*

In Ground Three(D), Redenius claims that counsel was ineffective in failing to object to the prosecutor referring to S.P. as a "little girl." He notes that, even though his trial had to be postponed due to S.P.'s pregnancy from a relationship in Hawaii, the prosecutor successfully moved the trial court to preclude any mention of S.P.'s sexual

history and pregnancy. He argues that the prosecutor improperly exploited the evidentiary ruling by repeatedly referring to S.P. as a "little girl" or "child" in her closing argument.

Having cited to the *Strickland* standard, the Nevada Supreme Court addressed the issue as follows in Redenius's post-conviction proceeding:

> [A]ppellant argues that trial counsel was ineffective for failing to object to the prosecutor's repeated references to the victim as a "little girl." Appellant failed to demonstrate deficiency or prejudice. Appellant identified no basis on which counsel could have successfully objected where the references to the victim's age were factually accurate and all but two of the identified references were made in closing argument. *See State v. Green*, 81 Nev. 173, 176, 400 P.2d 766, 767 (1965) ("The prosecutor had a right to comment upon the testimony and to ask the jury to draw inferences from the evidence, and has the right to state fully his views as to what the evidence shows."). We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-23, p. 4.

"Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during the closing argument and opening statement is within the 'wide range' of permissible professional conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (citing *Strickland*, 466 U.S. at 689). The record does not indicate that the prosecutor's description of S.P. was inaccurate, much less egregious. In addition, defense counsel effectively argued in her closing remarks that S.P. was not an innocent and defenseless victim. ECF No. 19-2, p. 57-69. Moreover, the jurors had ample opportunity to observe S.P. when she testified at trial and, for more likely than not, formed their own impression of her, rather than relying upon the prosecutor's descriptions.

Under the circumstances, the Nevada Supreme Court's application of the *Strickland* standard was not unreasonable. Ground Three(D) is denied.

*Ground Three(E)*

In Ground Three(E), Redenius alleges that the cumulative effect of counsel's errors warrants habeas relief. The Nevada Supreme Court rejected this claim, stating "[b]ecause appellant failed to demonstrate error, he necessarily failed to demonstrate

cumulative error." ECF No. 40-23, p. 6. Redenius has not shown that the Nevada Supreme Court's determination was based on an unreasonable application of the law or an unreasonable determination of the facts. Thus, Ground Three(E) is denied.

In summary, none of Redenius's IAC claims provide grounds for granting habeas relief in this case.

## IV. CONCLUSION

For the reasons set forth above, Redenius is not entitled to habeas relief.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Redenius's petition, the court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Redenius's habeas claims.

**IT IS THEREFORE ORDERED** that petitioner's amended petition for writ of habeas corpus (ECF No. 16) is DENIED. The Clerk shall enter judgment accordingly.

\ \ \

\ \ \

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

DATED THIS 25th day of September, 2018.

                                                                            _____
                                                                            UNITED STATES DISTRICT JUDGE